IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| ABBEY CAMPANELLI and ELIZABETH SPITZER, on behalf of themselves and all similarly situated individuals, | : : : : : | CASE NO.: 3:22-cv-1656 |
| Plaintiffs, | : : | JUDGE: _____ |
| v. | : : | |
| FIRELANDS REGIONAL MEDICAL CENTER, | : : : | **JURY DEMANDED** |
| Defendant. | : : | |

**COLLECTIVE ACTION AND CLASS ACTION COMPLAINT**

This is an action brought by Abbey Campanelli and Elizabeth Spitzer ("Named Plaintiffs") on behalf of themselves and all current and former non-exempt employees (hereinafter "the Putative Class Members") (Named Plaintiffs and the Putative Class Members will be collectively referred to as "Plaintiffs") who worked for Firelands Regional Medical Center ("Defendant" or "Defendant Firelands") at any time from approximately September 16, 2019 through the final disposition of this matter to recover compensation, liquidated damages, compensatory damages, punitive damages, attorneys' fees and costs, and other equitable relief pursuant to the provisions of Sections 203, 206, and 216(b) of the Fair Labor Standards Act of 1938 ("FLSA"), as amended 29 U.S.C. § 216(b), the Ohio Minimum Fair Wage Standards Act, O.R.C. §§ 4111 *et seq.*, (the "Ohio Wage Act"), the Ohio Prompt Pay Act ("OPPA"), O.R.C. § 4113.15 (the Ohio Wage Act and the OPPA will be collectively referred to as the "Ohio Acts") and O.R.C. § 2307.60.

The following allegations are based on personal knowledge as to Named Plaintiffs' own conduct and are made on information and belief as to the acts of others.

1

I. **JURISDICTION AND VENUE**

1. The jurisdiction of this Court is invoked pursuant to federal question jurisdiction under 28 U.S.C. § 1331, in that this case arises under a federal law of the United States.

2. This Court has supplemental jurisdiction over Named Plaintiffs' Ohio Acts claims pursuant to 28 U.S.C. § 1367 because these claims are so related to Named Plaintiffs' claims under the FLSA that they form part of the same controversy.

3. Venue in the Northern District of Ohio is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the unlawful conduct described herein occurred within Erie County, Ohio, and Defendant's headquarters is located there.

II. **THE PARTIES**

4. Abbey Campanelli ("Named Plaintiff Campanelli" or "Campanelli") is an adult resident of Vermillion, Ohio residing at 5570 Ingleside Avenue, Vermillion, Ohio 44089 and was formerly employed by Defendant as a Registered Nurse (RN). Campanelli was employed with Defendant Firelands from approximately May 1, 2009 until Defendant Firelands wrongfully terminated her in approximately April of 2022. Her consent form is being filed along with this Complaint pursuant to 29 U.S.C. § 216(b) and is attached hereto as **Exhibit A**.

5. Elizabeth Spitzer ("Named Plaintiff Spitzer" or "Spitzer") is an adult currently residing in San Diego, California at 4615 Pendleton Street, San Diego, CA 92109 and was formerly employed by Defendant Firelands as a Registered Nurse (RN). Spitzer was an Ohio resident while employed by Defendant Firelands from approximately November 21, 2019 until approximately May 29, 2021. Her consent form is being filed along with this Complaint pursuant to 29 U.S.C. § 216(b) and is attached hereto as **Exhibit B**.

6. The Putative Class Members are those current and former employees employed by Defendant as RNs at any time from approximately September 16 of 2019 through the final

disposition of this matter and have been subjected to the same illegal pay practice as the Named Plaintiffs.

7. Defendant Firelands is a domestic non-profit corporation licensed to do business in Ohio and currently doing business at 1111 Hayes Avenue, Sandusky, Ohio 44870. Process may be served upon its Registered Agent, Zach Wise, at 1111 Hayes Avenue, Sandusky, Ohio 44870.

### III. STATEMENT OF FACTS

8. During all times material to this Complaint, Defendant was an "employer" within the meaning of the FLSA and the Ohio Acts.

9. During all times material to this Complaint, Defendant employed Named Plaintiffs and the Putative Class Members within the meaning of the FLSA and the Ohio Acts.

10. During all times material to this Complaint, Defendant was an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has had employees engaged in commerce or in the production of goods for commerce, or has had employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000 per year (exclusive of excise taxes at the retail level).

11. During all times material to this Complaint, Defendant was an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 203(s)(1)(B) of the FLSA in that said enterprise is engaged in the operation of a hospital, an institution primarily engaged in the care of the sick, the aged, or the mentally ill or defective who reside on the premises of such institution (regardless of whether or not such hospital or institution is public or private or operated for profit or not for profit).

12. During all times material to this Complaint, Named Plaintiffs and the Putative Class Members have been Defendant's employees pursuant to the Ohio Acts and have been individual

employees who were engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §§ 206-07.

13. During all times material to this Complaint, Defendant hired the Named Plaintiffs and the Putative Class Members to work as Registered Nurses (RNs) to monitor and record patient vital signs, monitor and record patient progress, monitor patient care plans, assist with medical procedures, administer medications and treatments, draw blood and collect lab work, among other duties.

14. During all times material to this Complaint, Named Plaintiffs and the Putative Class Members were paid at an hourly rate, not on a salary or fee basis as described in 29 C.F.R. § 541.301 and thus were non-exempt employees entitled to be paid at least the minimum wage for all hours worked and overtime at 150% of their regular rate for all hours worked over forty (40) in a workweek.

15. Defendant uses employees like the Named Plaintiffs and the Putative Class Members to monitor and record patient vital signs, monitor and record patient progress, monitor patient care plans, assist with medical procedures, administer medications and treatments, draw blood and collect lab work, and provide other forms of assistance and care to patients.

16. Defendant would record Named Plaintiffs' and the Putative Class Members' hours worked through a manual clock-in system, wherein the Named Plaintiffs and the Putative Class Members would have to manually clock themselves in to work and clock themselves out at the end of their respective shifts.

17. Defendant would automatically deduct thirty (30) minutes from Named Plaintiffs' and the Putative Class Members' hours worked pursuant to its policy of not paying Named Plaintiffs and the Putative Class Members for their lunch break.

18.     Defendant employed a companywide policy of not permitting Named Plaintiffs and the Putative Class Members to clock-in until only a few minutes before the start of their respective shifts.

19.     However, the primary job duties assigned to Named Plaintiffs and the Putative Class Members often required them to arrive early—before the start of their respective shifts—to perform the integral and indispensable tasks of answering work-related phone calls, administering medication to patients, helping patients ambulate, assisting patients to the restroom, among others.

20.     These pre-shift integral and indispensable tasks could take anywhere from approximately fifteen (15) to twenty (20) minutes to complete, if not more.

21.     However, because of Defendant's companywide policy of not permitting Named Plaintiffs and the Putative Class Members to clock-in until just a few minutes before the start of their respective shifts, these pre-shift integral and indispensable tasks often, if not always, went uncompensated and unrecorded by Defendant's time management system.

22.     After the onset of the COVID-19 pandemic, around approximately March of 2020, Defendant began offering Named Plaintiffs and the Putative Class Members the performance-based bonus of (1) $100.00 to $300.00 and (2) an additional $20.00 per hour as a pay-rate increase if Named Plaintiffs and the Putative Class Members opted to take extra shifts to assist with patient management and care.

23.     Upon information and belief, these performance-based, non-discretionary bonuses were not included in Named Plaintiffs' and the Putative Class Members' regular rate for the purposes of calculating their overtime pay.

24.     Defendant also employed the companywide policy of providing Named Plaintiffs and the Putative Class Members with an unpaid thirty (30) minute lunch break.

25.     However, despite not being paid for their lunch break, Named Plaintiffs and the Putative Class Members often, if not always, worked during or through their respective lunch